UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 10-10229-RGS

BROADVOICE, INC., FRANK GANGI,
and LESLIE BERRY

v.

TP INNOVATIONS LLC and
MICHAEL T. BEDNAR

MEMORANDUM AND ORDER ON
DEFENDANTS' MOTION TO DISMISS
FOR LACK OF PERSONAL JURISDICTION,
IMPROPER VENUE, AND FORUM NON CONVENIENS

August 27, 2010

STEARNS, D.J.

On January 10, 2010, BroadVoice, Inc.,[1] Frank Gangi, and Leslie Berry filed suit against TP Innovations LLC and its principal, Michael T. Bednar, alleging defamation, trade disparagement, and intentional infliction of emotional distress.  The claims arise from Bednar's postings of unflattering comments about plaintiffs on an Internet website, www.bewareofbroadvoice.com.  Plaintiffs seek monetary damages, attorney's fees and costs, injunctive relief, and a trebling of any monetary award under the Massachusetts Fair Business Practices Act, Mass. Gen. Laws ch. 93A, § 11.

The case was filed originally in Middlesex Superior Court.  On February 2, 2010, it was removed by defendants to this court.  On February 17, 2010, Bednar moved to dismiss the action for lack of personal jurisdiction pursuant to Fed. Civ. P. 12(b)(2), or

---

[1]BroadVoice offers Voiceover Internet Protocol services that enable subscribers to make telephone calls over the Internet.

alternatively, on improper venue and *forum non conveniens* grounds.

BACKGROUND

BroadVoice is a Delaware corporation with a principal place of business in Billerica, Massachusetts.  Gangi is an officer and director of BroadVoice who resides in Brookline, Massachusetts.  Berry is an officer and director of BroadVoice who resides in Derry, New Hampshire.  (Berry works in Massachusetts).  TP Innovations is a Texas corporation with its place of business in Dallas, Texas.  TP Innovations has been defunct since December of 2009 and has no assets.  Bednar, who created and maintained the offending website from TP Innovation's headquarters (his apartment in Dallas), was (and remains) the sole officer and employee of TP Innovations.

Bednar became a BroadVoice customer on September 23, 2008.  He quickly became dissatisfied with BroadVoice's service, which he made known by posting complaints and derogatory remains on www.bewareofbroadvoice.com, a website that he had created for that purpose.  The website featured an open letter to BroadVoice (which Bednar named "The Internet Telephone Service From Hell") berating it for the alleged ill-treatment of its customers, and accusing it of engaging in illegal business practices in violation of state and federal laws, including the Racketeering Influenced and Corrupt Organizations Act (RICO).

Bednar urged disgruntled BroadVoice subscribers to share their experiences with other readers on his website's "Public Forum" and to write directly to the company to vent their wrath.  He also encouraged BroadVoice "victims" to file complaints with state Attorneys General offices, the Boston Better Business Bureau, the FBI Fraud Division, the

2

Federal Communications Commission (FCC), the Federal Trade Commission (FTC), and various financial institutions.  The site provided links to these agencies, as well as links to other websites containing customer complaints and information about lawsuits involving BroadVoice, its executives (including Gangi), and its affiliated companies.  With respect to the individual plaintiffs, the website stated:

> [t]he executives of BroadVoice are Less [sic] Berry, Michael Couture, Frank T. Gangi.  Internet searches for these individuals reveals [sic] a disturbing criminal past.  This Interesting Court Case [hyperlink] in which a restraining order was filed against Frank for installing a video camera in his significant others [sic] wall clock. Similarly, the same executives are named defendants in no fewer than a dozen lawsuits.

Compl. - Ex. A.  The defamatory content was available on the website from January 2, 2010, through January 23, 2010.[2]  The entire website was taken down on or about January 24, 2010.

At the time of the filing of the motion to dismiss, Bednar had been unemployed for over a year and was living on his parents' largesse.  His counsel is appearing pro bono. At a March 20, 2010 scheduling conference, the court agreed to a limited period of discovery, mostly of a jurisdictional nature.  On August 5, 2010, the parties filed a second status report in which plaintiffs indicated that they had received a "round of discovery dealing with defendants' financial condition" and that Broadvoice intended to settle its claims.  BroadVoice settled with Bednar on August 10, 2010.  It filed a stipulation of

---

[2]Under Massachusetts law, the imputation of a crime to another is defamatory per se.  Stone v. Essex Cnty. Newspapers, Inc., 367 Mass. 849, 853 (1975).

dismissal of its claims with prejudice on August 13, 2010.[3]

## MOTION TO DISMISS

On a Fed. R. Civ. P. 12(b)(2) motion to dismiss, a plaintiff bears the burden of persuading the court that jurisdiction exists. <u>Mass. Sch. of Law at Andover, Inc. v. Am. Bar Ass'n</u>, 142 F.3d 26, 34 (1st Cir. 1998), citing <u>McNutt v. Gen. Motors Acceptance Corp.</u>, 298 U.S. 178, 189 (1936). The court, however, must take the jurisdictional facts affirmatively alleged by the plaintiff as true and construe all "disputed facts in the light most hospitable to [the] plaintiff." <u>Ticketmaster-New York, Inc. v. Alioto</u>, 26 F.3d 201, 203 (1st Cir. 1994).

## DISCUSSION

This court has *in personam* jurisdiction over a defendant whose contacts with the forum in the aggregate satisfy the requirements of the Massachusetts Long-Arm Statute and the Due Process Clause of the Fourteenth Amendment. <u>See</u> <u>Ticketmaster</u>, 26 F.3d at 204, citing <u>United Elec. Workers v. 163 Pleasant St. Corp.</u>, 960 F.2d 1080, 1086 (1st Cir. 1992). Plaintiffs originally asserted personal jurisdiction over Bednar under subsections (a), (c), and (d) of the Long-Arm Statute.[4]

---

[3]Count II (trade disparagement) and Count IV (fair business practices) were pled solely by BroadVoice, and consistent with the stipulations of dismissal were dismissed in their entirety. Count I (defamation) and Count III (intentional infliction of emotional distress) were brought by all plaintiffs and survive as to the individual plaintiffs, Gangi and Berry.

[4]The Massachusetts Long-Arm Statue provides, in relevant part, as follows.

> A court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a cause of action in law or equity arising from the person's
>
> (a) transacting any business in this Commonwealth;

As BroadVoice is no longer a party, the only arguably applicable provision of the Long-Arm Statute is subsection 3(c).[5]  See Ticketmaster, 26 F.3d at 205, citing Murphy v. Erwin-Wasey, Inc., 460 F.2d 661, 664 (1st Cir. 1972).

"In its simplest formulation, *in personam* jurisdiction relates to the power of a court over a defendant.  It is of two varieties, general and specific." Pritzker v. Yari, 42 F.3d 53, 60 (1st Cir. 1994).  To establish specific jurisdiction (the only species of jurisdiction at issue), plaintiffs must demonstrate that Bednar has sufficient "minimum contacts" with Massachusetts.  See Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945).  Such contacts exist when: (1) the plaintiff's cause of action arises directly out of, or relates to, the defendant's forum-based contact; (2) the defendant purposefully availed himself of the privilege of conducting activities within the forum state; and (3) the finding of jurisdiction is consistent with traditional notions of "fair play and substantial justice."  Id., quoting Milliken v. Meyer, 311 U.S. 457, 463 (1940).

---

> (b) contracting to supply services or things in this Commonwealth;
> (c) causing tortious injury by an act or omission in this Commonwealth;
> (d) causing tortious injury in this commonwealth by an act or omission outside this Commonwealth if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in this Commonwealth; . . . .

Mass. Gen. Laws ch. 223A, § 3.

[5]As defendants argue, if the defamation claim arose from the parties' contractual relationship, the claim is precluded by the binding arbitration clause of the Service Agreement.  See Reply, Ex. A at 9.

1.  Relatedness

"The relatedness requirement . . . authorizes the court to take into account the strength (or weakness) of the plaintiff's relatedness showing in passing upon the fundamental fairness of allowing the suit to proceed." Ticketmaster, 26 F.3d at 207.  Here, plaintiffs' cause of action clearly arises out of Bednar's contact (even if its extent is contested) with Massachusetts.  The first prong is therefore satisfied.

2.  Purposeful Availment

The core question – one that the First Circuit has not addressed – is whether an active, interactive, or passive website located outside of Massachusetts and which Massachusetts residents can access over the Internet satisfies the purposeful availment test.[6]  Several lower court cases from this district are helpful in formulating an answer.

In Venture Tape Corp. v. McGills Glass Warehouse, 292 F. Supp. 2d 230 (D. Mass. 2003), McGills, a California-based company, was sued in Massachusetts by Massachusetts-based Venture Tape Corporation for trademark infringement.  Venture accused McGills, a supplier of stained glass window products, of embedding Venture's proprietary marks within its HTML code.  Consequently, McGills appeared prominently in the hits generated when potential customers searched the Internet for Venture products.  McGills moved to dismiss the lawsuit alleging that personal jurisdiction could not be based

---

[6]An active website is one on which business transactions are conducted.  A passive website is one on which the host merely makes information available to Internet users.  An interactive website, like Bednar's, is one that allows an exchange of information between the host and the user, but over which business is usually neither solicited nor conducted.  See  Zippo Mfg. Co. v. Zippo Dot Com, Inc., 952 F. Supp. 2d 1119, 1123-1124 (W.D.  Pa. 1997).

  
merely on the fact that its website was available on the Internet.  McGills' argument was not frivolous.  See id. at 232 ("Most courts confronting this question have required 'something more' than simply making an interactive website available.").  Judge Lasker, however, denied the motion to dismiss, finding the "something more."  "While the mere existence of an interactive website might not be enough to establish personal jurisdiction over McGills in a randomly chosen East Coast state, McGills' alleged misuse of trademarks belonging to a Massachusetts company is enough to constitute minimum contacts for the purposes of establishing personal jurisdiction."  Id. at 233.

Judge Lasker based his decision in large part on the holding of Toys "R" Us, Inc. v. Step Two, S.A., 318 F.3d 446 (3d Cir. 2003), a case involving an allegedly infringing website based in Spain.  The Third Circuit held that "the mere operation of a commercially active web site should not subject the operator to jurisdiction anywhere in the world. Rather there must be evidence that the defendant 'purposefully availed' itself of conducting activity in the forum state, by (1) directly targeting its web site to the state, (2) knowingly interacting with residents of the forum state via its web site, or (3) through sufficient other related contacts."  Id. at 454.  The Court found that Step Two's interactive website was not designed or intended to target customers in New Jersey (the website was in Spanish with product prices listed in Euros or pesetas).

> At best, Toys has presented only inconclusive circumstantial evidence to suggest that Step Two targeted its web site to New Jersey residents, or that it purposefully availed itself of any effort to conduct activity in New Jersey. Many of the grounds for jurisdiction that Toys advanced below have been deemed insufficient by the courts. First, the two documented sales appear to be the kind of "fortuitous," "random," and "attenuated" contacts that the Supreme Court has held insufficient to warrant the exercise of jurisdiction. As for the electronic newsletters and other email correspondence,

"telephone communication or mail sent by a defendant [do] not trigger personal jurisdiction if they 'do not show purposeful availment.'"

Id. at 455 (internal citations omitted).

Although Judge Lasker found that there was no evidence that McGills (like Step Two) had targeted Massachusetts residents specifically or had knowingly made any sales to Massachusetts residents, he found that the infringing use by McGills of trademarks belonging to Venture, a Massachusetts company, was reason enough to alert McGills to the prospect of being "haled into court in Massachusetts."[7]

Bednar's website was neither of a commercial nature nor directed specifically to a Massachusetts audience. While it may be true, as plaintiffs argue, that a Massachusetts resident who happened on the site might have been more likely to complain about BroadVoice to the Boston Better Business Bureau, there is no evidence that any such complaint was ever filed. The website was in existence for only twenty-one days and plaintiffs have presented no proof that it was ever accessed by anyone other than themselves. See Oasis Corp. v. Judd, 132 F. Supp. 2d 612, 621 (S.D. Ohio 2001) (rejecting personal jurisdiction over a non-Ohio resident where the Ohio plaintiff "do[es] not allege that the purportedly defamatory remarks have been communicated to any third person in Ohio; they likewise have adduced no evidence to support such a finding.").

---

[7]Judge Lasker also relied on Digital Equip. Corp. v. AltaVista Tech., Inc., 960 F. Supp. 456, 469 (D. Mass. 1997). Digital held that "[w]here the case involves torts that create causes of action in a forum state (even torts caused by acts done elsewhere) . . . the threshold of purposeful availment is lower. The defendant allegedly causing harm in a state may understandably have sought no privileges there; instead the defendant's purpose may be said to be the targeting of the forum state and its residents." Id. at 469, citing Calder v. Jones, 465 U.S. 783, 789-790 (1984).

Compare Kauffman Racing Equip., LLC v. Roberts, 930 N.E.2d 784, 795-796 (2010) (plaintiff produced evidence that at least five Ohio residents had read defendant's "rancorous criticisms" on various websites devoted to automobile racing equipment, thus establishing a defamatory "effect" in Ohio).

In Calder, a case that plaintiffs identify as "directly analogous" to this one, an editor and a writer for the National Enquirer, both of whom were residents of Florida, were sued in California for libeling Shirley Jones, a California actress. 465 U.S. at 789-790. The offending article involved Jones's California activities. It impugned the professionalism of an entertainer whose television career was centered in California. The story was drawn from California sources, and the brunt of the harm, in terms of emotional distress and injury to professional reputation, was felt in California. In upholding the exercise of personal jurisdiction over the two defendants, the Supreme Court pointed to the fact that the National Enquirer had its largest circulation – over 600,000 copies – in California. Id. at 789. Id. at 790. "[J]urisdiction properly could be asserted over the reporters because the defendants had aimed an act at the forum state, knew the act would likely have a devastating effect, and knew the injury would be felt in the forum state, where Jones lived and worked 'and in which the National Enquirer ha[d] its largest circulation.'" Calder 405 U.S. at 790. See also Noonan v. Winston, 135 F.3d 85, 90 (1st Cir. 1998).[8]

---

[8]The so-called "effects" test derived from Calder provides that

"a defendant's tortious acts can serve as a source of personal jurisdiction only where the plaintiff makes a prima facie showing that the defendant's acts (1) were intentional, (2) were uniquely or expressly aimed at the forum state, and (3) caused harm, the brunt of which was suffered – and which the defendant knew was likely to be suffered – [in the forum state]."

This case does not square with <u>Calder</u>.  Bednar's defamatory website was aimed at Massachusetts only in the sense that it could be accessed by Massachusetts residents (along with the rest of the world).  Bednar did nothing to incite residents of Massachusetts – as opposed to the world at large – to take up arms against BroadVoice.  Nor do Gangi and Berry (the latter a New Hampshire resident) even allege that Bednar intended that "the brunt of the harm" be felt in Massachusetts.  <u>Id</u>. at 789-790.  Finally, there is no evidence offered by plaintiffs that any Massachusetts resident (other than Gangi) ever actually accessed the contents of the website.  <u>See</u> <u>Noonan</u>, 135 F.3d at 91 ("Just as widespread circulation of a publication indicates deliberate action, thin distribution may indicate a lack of purposeful contact.").

In addressing claims of jurisdiction based on the Internet, Courts of Appeals have generally adopted the "<u>Zippo</u> test."  <u>See</u> <u>Zippo</u>, 952 F. Supp. 2d at 1124.  The <u>Zippo</u> test examines a website's relative degree of interactivity.  Under <u>Zippo</u>'s "sliding scale," the likelihood of personal jurisdiction being found is directly proportional to the amount of Internet activity purposefully generated by a defendant.

> At one end of the spectrum are situations where a defendant clearly does business over the Internet.  If the defendant enters into contracts with residents of a foreign jurisdiction that involve the knowing and repeated transmission of computer files over the Internet, personal jurisdiction is proper.  At the opposite end are situations where a defendant has simply posted information on an Internet Web site which is accessible to users in foreign jurisdictions.  A passive Web site that does little more than make information available to those who are interested in it is not grounds for the

---

<u>Johnson v. Arden</u>, ___F.3d___, 2010 WL 3023660, at *10 (8th Cir. Aug. 4, 2010), quoting <u>Lindgren v. GDT, LLC</u>, 312 F. Supp. 2d 1125, 1132 (S.D. Iowa 2004).

exercise [of] personal jurisdiction.  The middle ground is occupied by interactive Web sites where a user can exchange information with the host computer.  In these cases, the exercise of jurisdiction is determined by examining the level of interactivity and commercial nature of the exchange of information that occurs on the Web site.

Id.

The Sixth Circuit, following Zippo, classified a website soliciting support for a negative campaign against a business entity as "semi-interactive" in Cadle Co. v. Schlichtmann, 123 F. App'x 675, 678-679 (6th Cir. 2005).  The facts of Cadle Co. are very similar to those here.  Schlichtmann, a lawyer, sought to retaliate against Cadle for successfully suing him in Massachusetts.  Schlichtmann created a website, www.truthaboutcadle.com, on which he posted what he claimed were examples of Cadle's illegal business practices.  He also solicited other "victims" to join in a class action lawsuit against Cadle.  Cadle sued Schlichtmann in Ohio for defamation.  The Sixth Circuit found Schlichtmann's website to fall between "being interactive and passive, particularly because the website provides contact information and arguably solicits support for the campaign against Cadle's activities." Id. at 678.  But because Cadle "ha[d] not alleged that any interaction or exchange of information occurred between Schlichtmann and Ohio residents via the website, personal jurisdiction over Schlichtmann [did] not exist based on the nature of the website." Id.[9]  So it is here.

3. The Gestalt Factors

As the purposeful availment element is not met, the so-called "Gestalt factors,"

---

[9]The Ninth Circuit also employs the Zippo test, requiring a showing of more than "mere" advertising (essentially a "passive" website).  Rather, the defendant must have substantially directed his activity to the forum state.  See, e.g., Cybersell, Inc. v. Cybersell, Inc., 130 F.3d 414, 418 (9th Cir. 1997).

which are used to test due process considerations of fairness, need not be discussed, although on balance they slightly favor a finding of lack of jurisdiction, particularly on the first and fourth grounds (the burden on Bednar, who for all practical purposes is an indigent in appearing in a Massachusetts forum and the inability of the court to award meaningful compensation to plaintiffs, particularly when weighed against the costs of protracted litigation).[10]

ORDER

For the foregoing reasons, defendants' motion to dismiss for lack of personal jurisdiction is ALLOWED.  The Clerk may now close the case.

SO ORDERED.

/s/ Richard G. Stearns

_____

UNITED STATES DISTRICT JUDGE

---

[10]The five factors are: (1) the defendant's "burden" of appearing; (2) "the forum state's interest in adjudicating the dispute"; (3) the "plaintiff's interest in obtaining convenient and effective relief"; (4) the judicial system's "interest in obtaining the most effective resolution of the controversy"; and (5) the common interests of all sovereigns in promoting "substantive social policies."  Burger King Corp. v. Rudzewicz, 471 U.S. 462, 477 (1985), citing World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 292 (1980).